CYR et al.

v.

CRESCENT WHARF & WAREHOUSE CO. et al.

No. 13509.

United States Court of Appeals, Ninth Circuit.

March 30, 1954.

———◆———

Laughlin E. Waters, U. S. Atty., Max F. Deutz, Clyde C. Downing, Asst. U. S. Attys., Los Angeles, Cal., William S. Tyson, Sol. of Labor, Ward E. Boote, Asst. Sol. of Labor, Herbert P. Miller and Philip J. Lesser, Attys., Dept. of Labor, Washington, D. C., for appellants.

William E. Sommers, DeWitt A. Higgs, Miller, Higgs, Fletcher & Mack, San Diego, Cal., for appellees.

Before STEPHENS, ORR and POPE, Circuit Judges.

STEPHENS, Circuit Judge.

William Lasche, while at work as a longshoreman, sustained an injury to his left leg on September 6, 1950. Two months later, on November 7, 1950, he fell from a stepladder at his home, sustaining additional injuries. After and pursuant to a single hearing before Deputy Labor Commissioner Albert J. Cyr, Lasche was awarded compensation under the Longshoremen's and Harbor Workers' Compensation Act, Title 33 U.S.C.A. §§ 901 to 950, in one award, covering the injuries from both happenings. ("Compensation Order Award of Compensation, Claim No. 3544", p. 11, Record on Appeal.) The employer and the insurer brought this action, naming both Deputy Labor Commissioners for the 13th Compensation District as defendants, to enjoin enforcement of the award.

The district court, being of the opinion that Lasche was negligent and that his negligence constituted an intervening cause, ruled that no part of the award should be based upon the injuries sustained in the second happening, enjoined enforcement, and remanded the proceedings to the Commissioner with instructions " * * * [to] fix, after a hearing if necessary, compensation for the period which the original disability of September 6, 1950, might have continued if the second accident had not occurred." (Order of the Court, p. 32, Record on Appeal.) See Crescent Wharf & Warehouse Co. v. Cyr, D.C.Cal., 1952, 104 F.Supp. 779. The Deputy Labor Commissioners are here appealing from the order.

While Lasche was actually at work on the job and while easing himself down from the top of a hatch, he landed on his left foot and suffered a straining injury in the region of the left hip. He was disabled for twelve intermittent days during the period following the accident on September 6, 1950, "to and including November 6, 1950," and did not report for work on either of the twelve days. On the morning of November 7, 1950, Lasche was standing on the second or third step of a stepladder in his garage and he fell to the floor, suffering further injury. The Commissioner found, " * * * that because of the instability of the left leg this second injury is directly attributable to the injury of September 6, 1950 [the first accident] * * *." The district court thought, "A man in such a condition who steps upon a ladder, thus bearing his full weight upon an injured leg can hardly be said to have been using any care with reference to his injury." Crescent Wharf & Warehouse Co. v. Cyr, D.C. S.D.Cal., 1952, 104 F.Supp. 779, 783. And upon this premise found " * * * That the subsequent injury of November 7, 1950, was the result of an independent intervening cause and did not follow naturally or unavoidably, the first injury of September 6, 1950." (Findings of Fact and Conclusions of Law, p. 28, Record on Appeal, at pp. 29–30.)

An element in the basic philosophy of workmen's compensation law is the established fact that, careful as employer and employee have proven to be, injuries to employees continue to occur through defective machinery, inadequate places to work, negligence of the injured person, and negligence of fellow workmen.

In an earlier day of industry, it was thought logical enough for the law to exempt the employer from answering in damages for an employee's injuries caused by his own careless acts, and injuries caused by the negligent acts of a fellow workman. If compensation for the injury was to be had, the one who caused it by his carelessness, it would seem, should provide it.

But as the welfare of the workmen began to be considered by the employer and employee, to a great extent under the powerful urge of organized labor, it was realized that the principle that he who causes injury should compensate the injured, actually brought about deep injustices. In time it was realized that this old rule, which sounds axiomatically unassailable, when applied to compensation of injured industrial workers was based upon the standard of the faultless workman, a person who existed only in the imagination. It began to be realized that the topmost efficiency of men leaves uncovered a very considerable margin of ineradicable error as a continuing fact, as real and as necessary to industry planning as any other item. And an epocal change was wrought. Instead of every man being dependent on his own good luck and faultless care to keep him from ruin through his own or his fellow workmen's negligence or that of his employer's, the bald fact that injuries do happen was accepted as a constant in industry, and compensation therefor was placed where it more logically belonged —on the business itself. With such advance, through Workmen's Compensation laws, the old Tort rules of self-responsibility for negligence and of fellow workmen's negligence were wiped out with comprehensive elimination of negligence as the basis for compensation.

Section 904(b) of Title 33 U.S.C.A., provides without qualification that:

"Compensation shall be payable irrespective of fault as a cause for the injury."

And Section 902(2) of the same statute provides:

"The term 'injury' means accidental injury or death arising out of and in the course of employment, and such occupational disease or infection as arises *naturally* out of such employment or as *naturally or unavoidably* results from such accidental injury, * * *." [Emphasis ours.]

■ We here digress from the line of our comment to say that we reject the thesis that § 902(2) limits recovery for subsequent injury, to disease or infection. Although the composition of the section is awkard, we hold that the part of the section worded, "or as naturally or unavoidably results from such accidental injury" covers injuries through accidents which happen subsequently to a primary injury. In a sense, to be compensable, the second injury must be as a part of the original injury. If the two are separated by an intervening cause, the second injury is not as a part of the first injury.

■ Both the Commissioner and the district court found the first injury to Lasche to be compensable. The Commissioner held the second injury compensable because he found it to be "directly attributable" to the first injury. The court held the second injury not compensable upon its own finding that Lasche was negligent in being on the ladder in the circumstances of his injured leg, thus constituting a cause for the second injury intervening between the second and primary injuries.

The Commissioner should have found whether or not the second injury followed the first injury *naturally or unavoidably*, instead of finding that the second injury was *directly attributable* to the first injury. And the district court should have remanded the proceedings with instructions to do so.[1] We

1. *Head Drilling Co. v. Industrial Accident Comm.*, 1918, 177 Cal. 194, 197, 170 P. 157, 158: "* * * Whether the subsequent incident or accident is such, or

think "directly attributable" and "naturally or unavoidably" are not synonymous.

In the circumstances of the instant case, the fall from the ladder could well have been "directly attributable" to the weakness of the injured leg. Yet, the fall might not have been either the *natural* or the *unavoidable* result of the first injury. If, for example, the ladder had been shoved without Lasche being responsible therefor, causing Lasche's weight to fall upon the injured leg, and then it buckled, the consequent injury could be "directly attributable" to the first injury, yet it would not be the "natural or unavoidable" result of the first injury, because neither Lasche nor the employer had any control over the shove and it had no relation at all to the primary injury or to the industry Lasche was serving. In our example, the intervening cause—the shove—caused the extra weight to bear upon the leg which in turn caused the leg to buckle.

But all of this is not arguing to an exoneration from responsibility of the injured person in all circumstances. And we are now entering the area in which many courts have erroneously confused the negligent idea, in the face of the statutory interdiction.

Under the statute, if an employee who is suffering from a compensable injury sustains an additional injury as a natural result of the primary injury, the two may be said to fuse into one compensable injury.

But if the employee, while suffering from the primary injury sustains an additional injury off the job which is not the natural or the unavoidable result of the primary one and is adduced by the employee's own intention or carelessness, he can have no compensation for the added injury because the added injury would not have arisen from the hazards of the employment. By the use of the word "unavoidable" the statute placed upon the injured employee the duty of using due care in regard to his injury and limited the exclusion of negligence to the happening on the job which caused the primary injury.

If, as in our case, so far as shown by the evidence, Lasche used his injured leg, even going to work during the period between the two accidents with the exception of the twelve intermittent days on which he did not work during that period, and the injured leg did not buckle, there is nothing extraordinary about his feeling that he could safely stand on a step of a stepladder. (The evidence did not establish that Lasche was placing his whole weight on the injured leg when it buckled.) Such an act, without more, would not necessarily constitute negligence and as such be rightly charged with causing the leg to buckle.[2]

The statute provides, Title 33 U.S.C.A. § 903(b), that an injury caused solely by the intoxication of the injured one or by the willful intention of the employee to injure or kill himself or another, shall *not* be the basis of compensation. Burns Steamship Co. v. Pillsbury, 9 Cir., 175 F.2d 473. At no time in the instant case is there any evidence that Lasche was intoxicated or that he intended to injure or kill himself.

The judgment of the district court is reversed and remanded with instructions

should be regarded as an independent intervening cause is a question of fact for the commission, to be decided in view of all the circumstances, and its conclusion must be sustained by the courts whenever there is any reasonable theory evidenced by the record on which the conclusion can be upheld."

2. For a discussion of the subject matter see two law review articles in which the theories we have advanced are treated:

"Workmen's Compensation: Arising Out of Employment: Chain of Causation between Compensable Injury and Subsequent Injury, Aggravation, or Reinjury: Negligence of Workman as Independent Intervening Cause", 38 Cornell Law Quarterly 99 (1952); "Workmen's Compensation—Accident or Injury and Consequences Thereof—Subsequent Injuries", 19 University of Cincinnati Law Review 304 (1950).

458

to remand the case to the Commissioner with instructions to try the issue as to whether the second injury was or was not the *natural or the unavoidable* result of the first injury, and to relate such finding to the other facts in the case, as they may be found, all in accordance with the principles expressed in this opinion.

Reversed and remanded.