RAMÓN A. RIVERA RIVERA, MANAGER OF THE STATE INSURANCE FUND, Petitioner, *v.* INDUSTRIAL COMMISSION OF PUERTO RICO, ETC., Respondent.

No. O-71-133.        Decided January 14, 1972.

*Juan P. Quiñones Rivera, Milagros Muñiz Bou, Manuel Candelario Muñiz,* and *Leoncio Carrasquillo Suárez* for petitioner.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

The Manager of the State Insurance Fund appeals before this Court from the decision of the Industrial Commission of Puerto Rico of February 26, 1971, to the effect that it is not proper to deduct the compensation of $6,000 paid by petitioner to the injured worker for a condition of glaucoma resulting from a labor accident, from the compensation for total disability resulting from said injury, after falling immediately following receipt of treatment for his glaucoma condition. We conclude that the deduction lies, and by virtue thereof, that the decision of the Industrial Commission of Puerto Rico should be reversed.

The facts of this case, not controverted, as stated by the Industrial Commission, are the following:

"In the instant case the injured worker suffered a labor accident back in June 1965 as a result of which he was awarded 68% of total and permanent disability by decision of the Manager of the State Insurance Fund on September 13, 1967.

"On June 2, 1967, while undergoing treatment, the injured workman suffered a second intercurrent accident, accepted by the Insurer, in which the workman injured his left lower extremity for which injury he received rest treatment for several months at the end of which he was awarded 5% disability of the physiological functions of his left foot at the ankle.

"Later, and with respect to the first accident, the injured worker requested a medical hearing and at said hearing he was referred to the Consultant Ophthalmologist of that agency, who recommended an additional 20% disability for the workman, that is, a total disability for the first accident amounting to 88% of total and permanent disability.

"Subsequently, the Manager of the State Insurance Fund made a reevaluation of the entire case and according to his decision notified on August 28, 1968, decided that 'taking into consideration all the disabling factors' the injured is considered to be totally disabled.

"By that same decision an order was issued to deduct from the injured worker's compensation the amount of $6,000 inas-

much as said money had been paid to him for his partial permanent disability."

The legal provision invoked is that part of § 3 of the Workmen's Accident Compensation Act (11 L.P.R.A. § 3) entitled "Pre-Existent Disabilities." The pertinent part of this provision reads as follows:

"In all cases where a workman, by reason of a labor accident, suffers the aggravation or augmentation of a former disability not resulting from a labor accident, the disability resulting from the accident shall be compensated, including the former disability; but in those cases where the workman suffers the aggravation or augmentation of a pre-existent disability caused by a former accident and for which he received the corresponding compensation there shall be deducted from the compensation to which he may be entitled for the total disability resulting therefrom, the amount of the compensation he received for his pre-existent disability; Provided, *That in all cases where a workman suffers the aggravation or augmentation of a pre-existent disability and said aggravation or augmentation results in the total and permanent loss of the member or organ affected, or results in the total and permanent loss of the general physiological functions, the workman shall be compensated for the total disability without taking into consideration the pre-existent disability even if he received compensation therefor; . . . .*" (Italics ours.)

The parties accept that the second accident is an "intercurrent accident," that is, a compensable sequel. This term means that a subsequent injury, be it an aggravation of an existing one or a different one, is compensable, if it is a natural or a direct result of a primary compensable injury.

The respondent decided that the deduction in issue did not lie because "The statute clearly establishes that when a workman suffers the aggravation or augmentation of a pre-existent disability and said aggravation or augmentation results in the total or permanent loss of the general physiological functions, the workman shall be compensated for the total disability without taking into consideration the pre-

existent disability even if he received compensation therefor"; that "When the lawmaker does not make any distinctions we are precluded from doing so, therefore, if the second accident is compensable, be it because it is an accident in the course of employment and as a consequence of the same, or be it of an intercurrent nature that results in the augmentation or aggravation of a previous disability, the legal provision dealing with pre-existent disabilities is applicable"; and that "All the argument of the Manager in the sense that an intercurrent accident is related to the original one is correct, but that does not mean that therefore both accidents (original and intercurrent) are just one single accident. Although the intercurrent accident is a sequel or is related to the first accident, directly or indirectly, it does not mean that both accidents constitute only one accident. These are different events which occurred on different dates, both compensable in accordance with the just and reasonable interpretation that should be given to the legal provision regarding pre-existent injuries."

■ When the injury subsequent to the original compensable injury arises out of an activity in the "quasi course" of employment, as is the case of an injury suffered as a result of a fall in the course of a visit to the doctor's office for treatment of the original injury, this second injury is compensable because it arises "in the course of employment" or has a causal connection with the original accident. 1 Larson, *Workmen's Compensation Law*, §§ 13.11 and 13.13 (1968). See, *Andras* v. *Donovan*, 414 F.2d 241 (5th Cir. 1969); *Immer & Co.* v. *Broshnahan*, 152 S.E.2d 254 (Va. 1967); *Ada Iron Metal Company* v. *Tarpley*, 420 P.2d 886 (Okla. 1966); *Lieberman* v. *Sunray Drug Company*, 204 A.2d 783 (Pa. Super. Ct. 1964); *Fitzgibbons* v. *Clarke et al.*, 285 N.W. 528 (Minn. 1939); *Goldberg* v. *954 Marcy Corporation*, 12 N.E. 2d 311 (Ct. App. N.Y. 1938); *Travellers Insurance Co.* v. *McLellan*, 302 F.Supp. 351 (E.D. N.Y. 1969).

The provision regarding pre-existent disabilities, of § 3 of the Workmen's Accident Compensation Act covers three situations resulting *from a labor accident,* to wit:

1.—Compensation for a labor accident that aggravates a former disability not resulting from a labor accident—in this case the compensation shall include the former disability;

2.—When the workman suffers the aggravation or augmentation of a pre-existent disability caused by an accident for which he received compensation there shall be deducted, from the compensation for the resulting total disability, the amount of the compensation previously paid, and

3.—*When the labor accident causes the aggravation or augmentation of a pre-existent disability and said aggravation results in the loss of the member or organ affected, or results in the total and permanent loss of the general physiological functions, compensation shall be granted for the total disability without taking into consideration the pre-existent disability even if the worker received compensation therefor.*

The petitioner maintains that injuries caused by an "intercurrent accident", if compensable, are compensated within the labor accident which caused them as being part of the same transaction; that the respondent's decision produces the contradiction that a person who suffers only one labor accident is compensated as if he had suffered two labor accidents; that if the interpretation of § 3 of the Workmen's Accident Compensation Act made by the Industrial Commission in this case is sustained, not only budgeting would be required for these costs which were not previously contemplated but in addition, the constitutional guarantee of equality in the protection of the laws would be violated.

The Manager adds that it is improper to grant "higher benefits for a single accident" to a workman under the circumstances of this case than to a 23-year old workman who becomes paraplegic as a result of a severe labor accident.

The facts in the case as pointed out by the respondent in its order of February 26, 1971, do not establish that the second accident, that is, the fall in which the workman injured his ankle, had any connection with the condition of glaucoma which was connected to his first accident. Neither do they establish aggravation of the glaucoma by the fall. Nevertheless, the record shows, that as a result of the second accident, the Manager "assigned [to the injured workman] another disability equivalent to the loss of 5% of the physiological functions of the left foot at the ankle resulting from an intercurrent accident covered by the Workmen's Accident Compensation Act . . . which was not put into effect because orders had been issued to pay the workman the amount of $6,000 which is the maximum authorized by law for partial permanent disability."

The cases previously quoted sustain the Manager's decision to declare the second accident compensable under the law in force. But we have not found in the record any evidence or proof whatsoever establishing that the condition of glaucoma, from which the disabled workman was suffering, was aggravated by the second accident to the point that it caused total disability to him.

■ In order to prevent that deduction be made of the original $6,000 compensation from the compensation for the total disability in accordance with the third alternative established by the provision of the aforesaid § 3 concerning pre-existent disabilities, *it was necessary to establish, and it was not established,* that a second labor accident *aggravated* the pre-existent disability to the extent that it resulted in "the total and permanent loss of the general physiological functions" so as "to compensate for the total disability without taking into consideration the pre-existent disability even if the workman received compensation therefor."

In the instant case, on the contrary, the Industrial Commission concluded that after the second accident, at the in-

jured workman's request, and as to the first accident, he was examined by the Consultant Ophthalmologist of the State Insurance Fund who recommended that he be awarded a twenty percent (20%) additional disability, that is, a total disability for the first accident for which reason the petitioner decided "that the injured workman was totally disabled."

The foregoing rather shows that the condition of glaucoma connected with the injured workman's first accident was aggravated by reason of the natural and usual course of that disease and not as a result of the second accident, it not having been established that the second injury caused the aggravation of the first to the point of totally disabling the injured workman.

From the foregoing we conclude that the aforesaid provision entitled "Pre-Existent Disabilities" of § 3 of the Workmen's Accident Compensation Act is not applicable to the circumstances of this case. On the contrary, it is a question of the reevaluation of a partial disability which resulted from the first accident. It is proper, by virtue thereof, for the State Insurance Fund to pay to the injured workman the difference between the compensation for his total disability resulting from the reevaluation of his condition of glaucoma and the compensation previously paid for the percentage of partial disability originally awarded for the injury resulting from the said first accident.

Therefore, the decision of the Industrial Commission in this case must be reversed and the proportional deduction of the $6,000 paid to the injured workman from the monthly payments to which he is entitled must be ordered as established in the petitioner's decision of August 28, 1968.

Mr. Chief Justice Negrón Fernández and Mr. Justice Hernández Matos took no part in the decision of this case.